DECISION AND JOURNAL ENTRY
 INTRODUCTION {¶ 1} This case concerns the permanent custody of a minor. The issues raised in this appeal by the father of the child primarily concern a claim that the evidence did not support the trial court's decision and that the trial court failed to consider the less drastic placement of legal custody to the child's grandmother rather than permanently terminating parental rights. The mother of the child did not actively contest the permanent custody motion and is not a party to this appeal. This Court has concluded that the trial court fully considered the option of placing the child with his grandmother and the evidence that the agency presented at the hearing supported the trial court's decision to terminate parental rights.
 BACKGROUND {¶ 2} Roy. H. is the natural father of N.H., born October 11, 2000. Shortly before this case began, N.H. had been living with both of his parents, but the parents' relationship had *Page 2 
apparently been riddled with problems of mental illness, substance abuse, and domestic violence. The parents terminated their relationship at the end of 2005, and the mother filed for divorce. After the relationship ended, the father resided in Clermont County, near his family, and the mother took N.H. to live with her mother in Summit County. On April 24, 2006, Summit County Children Services Board filed a complaint in juvenile court alleging that N.H. was a neglected and dependent child due to the mother's alcohol abuse. Children Services further alleged that the father was residing in Clermont County and that a civil protection order stemming from an incident of domestic violence prevented him from having custody of the child.
 {¶ 3} The case plan reunification goals for the father focused on stabilizing his mental health and resolving his anger management and substance abuse problems. The father had been diagnosed with bipolar disorder many years earlier, but had never been able to stabilize his mental health because he had been inconsistent in taking his prescribed medications. The father admitted that he also had a life-long problem with substance abuse that had led to several criminal convictions and that he had often acted violently toward others while in an agitated mental state. One of his counselors noted, however, that the father tended to minimize these problems as well as his need for treatment.
 {¶ 4} Both the father and the paternal grandmother moved for legal custody of N.H. during the pendency of this case. Following a hearing on the legal custody motions as well as Children Services' motion for a six-month extension of temporary custody, the trial court denied the motions for legal custody and instead extended temporary custody for another six months. The trial court explained that it had denied both motions for legal custody primarily due to the father's unstable mental health and the paternal grandmother's inability to protect N.H. from the father's erratic behavior. *Page 3 
 {¶ 5} A few months later, Children Services moved for permanent custody of N.H. Following a hearing on the motion, the trial court found that N.H. had been in the temporary custody of Children Services for more than twelve of the prior twenty-two months and that permanent custody was in his best interest. Consequently, the trial court terminated both parents' rights and placed N.H. in the permanent custody of Children Services. The father has timely appealed and has raised four assignments of error.
 LACK OF ADOPTION PLAN {¶ 6} The father's first assignment of error is that the trial court should not have granted the motion for permanent custody because Children Services had not yet updated the child's case plan with a specific adoption plan. Section 2151.413(E) of the Ohio Revised Code provides: "Any agency that files a motion for permanent custody under this section shall include in the case plan of the child who is the subject of the motion, a specific plan of the agency's actions to seek an adoptive family for the child and to prepare the child for adoption." According to the father, Section 2151.413(E) requires that a children services agency file a specific plan for adoption as a prerequisite to filing a motion for permanent custody.
 {¶ 7} As acknowledged by the father, the issue raised by this argument was pending before the Ohio Supreme Court at the time he filed his brief. Shortly after he filed his brief, the Ohio Supreme Court decided that issue in In re T.R., 120 Ohio St. 3d 136, 2008-Ohio-5219.
 {¶ 8} In In re T.R., the Supreme Court emphasized that Section 2151.413 does not include any temporal aspect to mandate that the agency file the permanency plan prior to or at the time it files its motion for permanent custody. Id. at ¶ 10. Therefore, the Court held that Section 2151.413(E) does not require a children services agency to update the child's case plan *Page 4 
with an adoption plan before it files, or before the juvenile court grants, a motion for permanent custody. See Id. at syllabus. The father's first assignment of error is overruled.
 LEGAL CUSTODY {¶ 9} The father's second assignment of error is that the trial court incorrectly granted permanent custody to Children Services when instead it could have placed the child in the legal custody of the paternal grandmother, a less drastic alternative to permanent custody that would have preserved the father's parental rights. Focusing his argument solely on the evidence and arguments presented at the permanent custody hearing, the father has maintained that the trial court failed to explore the dispositional alternative of placing N.H. in the legal custody of his grandmother.
 {¶ 10} The record reveals, however, that the trial court fully examined such a potential permanent placement at a prior hearing. Seven months prior to the permanent custody hearing, the trial court held a hearing on the paternal grandmother's motion for legal custody. After considering all of the evidence before it, the trial court denied the grandmother's motion and instead granted Children Services an extension of temporary custody.
 {¶ 11} The trial court explained that placement with the paternal grandmother would not be in the best interest of N.H. because the grandmother had demonstrated an inability or unwillingness to protect the child from the risks of his father's uncontrolled mental illness. The trial court emphasized that the father had suffered from problems with his mental illness for more than two decades; he had a history of failing to take his prescribed medication consistently; he had to be hospitalized for psychiatric treatment on several occasions when he stopped taking his medication; and both the father and the grandmother tended to understate the severity of the father's mental illness. The father has not challenged the propriety of the trial court's earlier *Page 5 
decision to deny the grandmother's motion for legal custody. The father's second assignment of error is overruled.
 BEST INTEREST EVIDENCE {¶ 12} The father's third assignment of error is that the trial court's decision to terminate his parental rights and place his minor child in the permanent custody of Children Services was not supported by the evidence presented at the hearing. Before a juvenile court can terminate parental rights and award to a proper moving agency permanent custody of a child, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned, orphaned, has been in the temporary custody of the agency for at least twelve months of the prior twenty-two months, or that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under Section 2151.414(E) of the Ohio Revised Code; and (2) the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under Section 2151.414(D. See R.C. 2151.414(B)(1); R.C.2151.414(B)(2); see, also, In re William S., 75 Ohio St. 3d 95, 99
(1996).
 {¶ 13} The trial court found that the first prong of the permanent custody test was satisfied because N.H. had been in the temporary custody of Children Services for more than twelve of the prior twenty-two months at the time Children Services filed its motion. The father does not dispute that finding, but instead challenges the trial court's determination that permanent custody was in the best interest of N.H.
 {¶ 14} When determining whether a grant of permanent custody is in the child's best interest, the juvenile court must consider all the relevant factors, including those enumerated in Section 2151.41.4(D) of the Ohio Revised Code: the relationships of the children, the wishes of *Page 6 
the children, the custodial history of the children, and the children's need for permanence in their lives. See In re S.N., 9th Dist. No. 23571,2007-Ohio-2196, at ¶ 27.
 {¶ 15} The record reflects that the father and N.H. had a strong father-child bond and the father desired to have a relationship with his son. When the case began, however, the father was unable to visit N.H. due to a civil protection order that had been granted to the mother that also prevented the father from having any contact with N.H. Shortly after this case began, the father moved to have the civil protection order lifted so he could visit with N.H. Children Services initially opposed any visitation with the father due to concerns about his unstable mental health. The father had been unable to control the symptoms of his bipolar disorder because he had not been consistent in taking his prescribed medication, apparently due to undesirable side effects of the medication. Without medication, the father would eventually experience mood swings and racing and irrational thoughts and, as a result, behave in a manner that was potentially harmful to himself or others. The father had been involuntarily hospitalized on numerous occasions due to his behavior when he was off his medication.
 {¶ 16} During August 2006, Children Services alleged that the father had again stopped taking his psychiatric medication. At about the same time, the magistrate continued the adjudication hearing and appointed a guardian ad litem to represent the father due to his behavior when he appeared for the hearing. In the opinion of the magistrate, the father did not seem to be able to understand or follow the required procedures. Due to the concern about the father's mental health, the trial court also ordered that he have no contact with N.H. until further order of the court. Within the next few months, the probate court involuntarily committed the father for psychiatric treatment. *Page 7 
 {¶ 17} By November 2006, because the father had been taking his medication for several weeks and his mental health appeared to be stable, the trial court ordered a one-time supervised visit between the father and N.H. Weekly visitation apparently began within the next few months. The father visited N.H. for the next several months and, according to the case worker, his interaction with N.H. was appropriate.
 {¶ 18} Although the father demonstrated a bond and commitment to his child for several months, without any explanation, he ended all reunification efforts approximately two months before the permanent custody hearing. The father stopped submitting urine samples for required drug screening, failed to attend any of the scheduled weekly visits with N.H., and failed to appear for the permanent custody hearing. The father did not contact the caseworker or anyone else at Children Services, nor did he call or write the foster family, the child, or anyone else to give notice or offer an explanation for his sudden lack of involvement. The father simply stopped participating and apparently did not consider the impact that his conduct would have on his child. The foster father testified that N.H. was extremely disappointed by his father's repeated absences from the scheduled visits and that the child had questioned whether his father still loved him.
 {¶ 19} In contrast, N.H. had received consistent love and support in the same foster home for two years. The foster family had been taking him to regular counseling to cope with the adjustments in his life; he was doing well in school; and he had assimilated into the foster family. The foster father testified that he loved N.H. as much as he loved his own child and indicated that he and his wife were interested in adopting N.H. if the trial court decided that permanent custody was in his best interest. The guardian ad litem also testified that N.H. was bonded with the foster parents and that the foster parents have a loving relationship with him. *Page 8 
 {¶ 20} N.H. had expressed a desire to live with his father, but he had also indicated that he wanted to stay with his foster family. The guardian ad litem, who had been assigned to the case for the entire two years, filed a lengthy written report and also testified at the permanent custody hearing. The guardian's report listed hundreds of personal and telephone contacts that she had made with those connected to the case, as well as hundreds more that she had attempted to make. The guardian also reviewed all of the written records in the case. After a comprehensive summary of what had transpired during the past two years, the guardian ad litem concluded that permanent custody was in the child's best interest. To support this conclusion pertaining to the father, she emphasized his mental health problems and his failure to be consistent with his medication, including his "tendency for going missing" during the case planning period, as well as his "bouts of aggressive and hostile behavior[.]"
 {¶ 21} The custodial history of N.H. prior to the beginning of this case is unclear, except that he had lived with his parents who had long-standing problems with mental illness, substance abuse, and domestic violence. During the two years prior to the permanent custody hearing, N.H. had been in the temporary custody of Children Services. As this Court emphasized in In re Smith, 9th Dist. No. 20711, 2002 WL 5178
at *5 (Jan. 2, 2002), however, "the time period in and of itself cannot be held against the parent without considering the reasons for it and the implications that it had on this child." The trial court extended temporary custody repeatedly to give the parents more time to work on the goal of reunification. The father had periods of stability, but was never able to completely stabilize his mental health or demonstrate that he had maintained sobriety for an extended period of time. The father also failed to complete the anger management or parenting classes that were required before he could be reunified with N.H. *Page 9 
During the last two months of this period, the father stopped working toward reunification altogether.
 {¶ 22} During this same two-year period, N.H. was doing well in the foster home and had achieved stability for the first time in his life. His school performance and his behavior had improved in a structured environment.
 {¶ 23} N.H. had been in the custody of Children Services for more than two years and was in need of a legally secure permanent placement. Neither of his parents was in a position to provide him with a stable home, and Children Services had been unable to find any suitable relatives who were willing or able to take custody of him on a permanent basis. Therefore, the trial court reasonably concluded that a legally secure permanent placement could only be achieved by granting permanent custody to Children Services.
 {¶ 24} Given the ample evidence before the trial court, it reasonably concluded that permanent custody was in the best interest of N.H. The father's third assignment of error is overruled.
 ASSISTANCE OF COUNSEL {¶ 25} The father's final assignment of error is that his trial counsel was ineffective for failing to ensure that his Clermont County therapist testified at the permanent custody hearing. The father has suggested that the therapist's testimony would have been favorable to him and that it would have prevented the trial court from granting permanent custody to Children Services.
 {¶ 26} To establish a claim of ineffective assistance of counsel, the father must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense. Strickland v.Washington, 466 U.S. 668, 687 (1984). A "deficient *Page 10 
performance" is one that fell below an objective standard of reasonableness. Id. at 687-88. To establish prejudice, the father must show that there is a reasonable possibility that, but for counsel's errors, the result of the proceeding would have been different. Id. at 694.
 {¶ 27} The father has maintained that his trial lawyer was ineffective for failing to ensure that his therapist testified at the permanent custody hearing, but he has not explained what her testimony would have been, nor has he demonstrated that her testimony would have changed the outcome of the permanent custody hearing. There was strong evidence supporting the trial court's decision, including that the father had a long history of mental illness, anger leading to outbursts of violence, and drug abuse and that he had been unable to control any of these problems on a long-term basis. The father has failed to demonstrate that his therapist's testimony would have contradicted any of the evidence that supported the trial court's decision.
 {¶ 28} Moreover, the reasonableness of trial counsel's performance must be examined in light of the limitations that the father's own behavior placed on counsel's ability to represent him. See Id. at 691. The record reveals that the father's Clermont County therapist did not testify and Children Services was unable to check any of the father's recent Clermont County counseling records because the father failed to sign the release that Children Services gave him. Therefore, it appears that it was father's failure to waive his privilege as the therapist's client that kept her testimony from the trial court's consideration, not any deficiencies of his trial counsel. This Court also notes that trial counsel's ability to represent the father was further hampered by the father's failure to attend the permanent custody hearing. The father has failed to demonstrate that he received ineffective assistance of counsel. The fourth assignment of error is overruled. *Page 11 
 CONCLUSION {¶ 29} The father's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to appellant.
 SLABY, J. MOORE, P. J. CONCUR. *Page 1