[Cite as *In re L.M.*, 2014-Ohio-4015.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| IN RE: L.M. | : | JUDGES:<br>Hon. William B. Hoffman, P.J. |
|  | : | Hon. W. Scott Gwin, J. |
|  | : | Hon. John W. Wise, J. |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : | Case No. 14-CA-7 |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Civil appeal from the Fairfield County Court of Common Pleas, Juvenile Division, Case No. 2010-AB-0159

JUDGMENT:      Affirmed

DATE OF JUDGMENT ENTRY:      September 12, 2014

APPEARANCES:

For - Appellee - FCCPS
JULIE BLAISDELL
239 West Main Street, Ste. 101
Lancaster, OH 43130

For - L.M.
ANGELA SEIMER
109 N. Broad Street
Lancaster, OH  43130

For - Appellant – K.M.
BENJAMIN SWAIN
Stebelton, Aranda & Snider
109 N. Broad Street, Ste. 200
Box 130
Lancaster, OH 43130

Guardian Ad Litem
LISA A. LONG
414 E. Main Street, Ste. 200
Lancaster, OH 43130

*Gwin, J.,*

{¶1} Appellant K.M. ("Mother") appeals from the November 20, 2013 judgment entry of the Fairfield County Court of Common Pleas, Juvenile Division, terminating her parental rights and granting permanent custody of L.M. to Fairfield County Child Protective Services ("FCCPS").

*Facts & Procedural History*

{¶2} Appellant is the mother of L.M., born June 3, 2005. On September 16, 2010, FCCPS filed a complaint of dependency with regard to L.M. The complaint alleged, in part, that FCCPS had been involved with Mother since March of 2010 for issues concerning prescription drug and methamphetamine abuse. Further, that Mother had positive drug screens, was inconsistent with drug testing and mental health services, and had a criminal history. L.M. was adjudicated dependent on October 19, 2010 after Mother stipulated to a finding of dependency. At the dependency hearing, Mother was ordered to comply with a case plan, obtain a psychological evaluation and follow any recommendations, stay clean and sober, submit to drug and alcohol screens at the discretion of FCCPS, and submit to a drug and alcohol evaluation at the Recovery Center. Further, the trial court found, by clear and convincing evidence, that Mother had issues with drugs and/or alcohol so significant that L.M. was placed at risk.

{¶3} FCCPS established a case plan for Mother in October of 2010. In the case plan Mother was ordered to: (1) complete a psychological assessment and follow any recommendations made; (2) complete a substance abuse assessment and follow any recommendations made; (3) not abuse alcohol or drugs; (4) comply with call-in screening for random drug testing; (5) consistently maintain income and provide

verification of income; (6) maintain a safe and clean home appropriate for and meeting the needs of all the children; (7) is able to demonstrate or provide verification of a consistent and stable residence; and (8) signs all releases of information.

{¶4} On April 12, 2011, FCCPS filed a motion requesting legal custody of L.M. be given to the Bennett's, L.M.'s uncle and aunt. On July 1, 2011, the case plan was amended to remove Mother as a participant because she had no contact with FCCPS since March of 2011. Lisa Long ("Long") was appointed as Guardian ad Litem for L.M. on January 25, 2011. Long filed a report on July 12, 2011, and indicated her concerns with Mother were as follows: substance abuse, lack of housing and employment, failure to complete case plan, and lack of contact with the children. The trial court held two review hearings on July 19, 2011 and October 11, 2011, at which Mother did not appear.

{¶5} On March 20, 2012, the case plan was amended to add services for Mother after she re-established contact with FCCPS. Mother was ordered to: (1) follow recommendations from her psychological assessment, including counseling and additional parenting training; (2) follow through with an evaluation for psychological medications she says she needs; (3) complete a substance abuse assessment and follow recommendations; (4) not abuse drugs and submit to random drug screens; (5) document prescription medications; (6) follow through with medical care as expected by her physicians and specialists; (7) any individuals in Mother's life around the children must follow through with the requests of the agency, including background checks and drug screenings; (8) obtain stable and safe housing; (9) obtain a stable income; and (10) sign all releases as requested by FCCPS.

{¶6} On May 31, 2012, FCCPS filed a motion requesting legal custody of L.M. be given to her foster parents. At a case review on August 13, 2012, FCCPS stated that Mother would need to repeat the substance abuse assessment because she failed to inform the assessor about her history with narcotics. Long issued a second report on August 23, 2012, stating her concerns about Mother included: substance abuse issues, lack of financial independence and employment, failure to complete the case plan, lack of consistent contact with children for the past two years, inability to care for herself due to her medical condition, and that Mother's boyfriend tested positive for oxycodone, though he stated that he gave Mother her medication and then put "chew" in his mouth without washing his hands. Long recommended legal custody of L.M. be given to her foster parents.

{¶7} FCCPS filed a motion for permanent custody of L.M. on November 6, 2012. The contested trial on the motion for permanent custody started on January 31, 2013. Also on that day, FCCPS dismissed the motion for legal custody.

{¶8} Michele Preuss ("Preuss"), a licensed professional clinical counselor at Kidz Kounseling testified on January 31, 2013. L.M. meets with Preuss once a week herself and also meets with Preuss once a week with Mother. Preuss testified that L.M.'s opinion as to where she wants to live changes depending on who is in the room. Without Mother in the room, L.M. wants to stay with her foster family, but does not want to tell Mother and hurt her feelings. When Mother is in the room, L.M. tells Mother that if she makes the right choices, L.M. would want to live with her. Preuss stated L.M. has a bond with Mother. Preuss testified that L.M. longs for permanency and the most important thing in L.M.'s life right now is permanency.

{¶9} Mother testified at the January 31, 2013 hearing as on cross-examination. Mother stated she divorced L.M.'s father because of his alcohol and cocaine abuse. She also left N.W., a former boyfriend who lived with her and the kids, because he was getting into methamphetamine. Mother's current boyfriend is T.K. and they live with friends because T.K. is unemployed and Mother cannot work. Mother told FCCPS she was living with friends, but never gave them the exact address. Mother testified she had a seizure while riding a bike in April of 2011 and was in the hospital for a month after the accident. She did not tell FCCPS her address from May of 2011 to November of 2012 because she did not have a place to live and went from place to place. Mother confirmed that L.M. last lived with her in March of 2010. Mother testified doctors will not allow her to work due to her seizures. She applied for disability and was initially denied, but she is appealing that ruling. Mother has a food card and a medical card, but T.K. provides everything else for her. There is a child support order in place for L.M., but Mother testified she has never paid any child support. Mother could not remember if she had any previous criminal charges, but said her memory is not good due to her bike wreck. Mother also could not remember everything on her case plan.

{¶10} Mother testified she could not participate in the random drug screens or go see a counselor because she is not allowed to drive. Mother stated she had prescriptions for oxycodone, but never showed the prescriptions to the caseworker assigned to her until recently. Mother testified her prescription medications are why she tested positive for oxycodone when she did appear for drugs screens from October of 2010 to February of 2011. Mother denied telling the psychological evaluator that she engaged in inappropriate use of Vicodin, Percocet, and Xanax on a daily basis and

denied ever having a psychological assessment. Mother admits it took her two years to complete a substance abuse assessment and also admits she did not complete a new substance abuse assessment as ordered by FCCPS in August of 2012. Mother testified she asked her doctor about a non-narcotic pain medication in August or October of 2012, but he never got back to her; she called his office for awhile, but then stopped calling.

{¶11} The trial was then continued to April 9, 2013. However, the trial was continued again to June 18, 2013 because, in April, Mother was allegedly experiencing symptoms of a seizure and was taken to the hospital via ambulance. On June 18, while Mother appeared at the hearing, Mother only received six days notice of the hearing, not the seven days required by statute. Mother was not willing to waive the seven-day notice requirement and thus the trial was again re-scheduled.

{¶12} Mother testified on cross-examination on September 10, 2013. Mother testified that she and T.K. now have an apartment and they are current on rent. Mother gets food stamps and cash assistance, but does not know how long they will last. They are paying rent with T.K.'s unemployment checks. Mother is still trying to get disability and still has not paid anything on the child support order. Mother testified she has been off her seizure medication for a few months because she has to find a family doctor to prescribe them as she was discharged from her family doctor because she missed an appointment. Mother has called some doctors on her insurance list, but not all of them. Mother again confirmed she missed random drug screens because she does not have a ride. However, when asked how she will transport the children, Mother testified she has a friend with a car who could help her with the kids. Mother testified she attempted

suicide once prior to FCCPS getting involved in the case. Mother wants L.M. to take a class about people with seizures and believes she can pick up the phone and take care of herself if Mother has a seizure.

{¶13} Elyssa Wanosik ("Wanosik") also testified on September 10, 2013. Wanosik is a caseworker for FCCPS and has been assigned to L.M.'s case since September of 2010. Wanosik testified L.M. has been in the temporary custody of FCCPS since October 19, 2010, more than twelve out of the last twenty-two months. Mother had a case plan originally in October 2010, but was removed from the case plan in June of 2011 due to lack of contact and compliance with FCCPS. Mother was added to the case plan again in March of 2012. Wanosik confirmed Mother's case plan requirements as detailed above. Mother drug screened from October 2010 to April of 2011 and, out of 64 calls, she missed 24 screens, had 17 positive screens for oxycodone, 5 negative screens, and one diluted test. From February 15, 2012 to May 1, 2013, Mother missed 95 drug screens. Mother completed her substance abuse assessment in July of 2012. However, Wanosik testified she wanted Mother to repeat this assessment because she did not tell the evaluator that there were concerns about opiate use in the past. Wanosik referred Mother to a Cleveland Clinic program to treat her pain but also wean off narcotic pain medication. However, Mother told Wanosik the program was not in her insurance plan. Wanosik wrote a letter to Mother's doctor requesting non-narcotic pain medication, but Mother informed Wanosik the doctor refused her request. Wanosik requested a mental health assessment for Mother due to her suicide attempt in 2009.

{¶14} Wanosik testified Mother has not successfully completed her case plan because she has not complied with the mental health evaluator's recommendations for ongoing counseling, is not consistent with calling in or appearing for drug screening, does not have a family doctor, does not have stable housing because there is no lease for her current house, and does not have stable employment or income. Wanosik was also concerned that T.K. tested positive for oxycodone without a prescription. Wanosik testified Mother has a 2008 conviction for child endangerment. Wanosik confirmed Mother had no contact with L.M. from March 2011 to May of 2012 and thus Wanosik has concerns about the stability of L.M. Wanosik testified that L.M. enjoys her visits and is bonded with Mother, but struggles with placement issues.

{¶15} Wanosik testified that Mother has repeatedly, substantially, and continually failed to remedy the conditions that caused L.M. to be placed outside the home and failed to fully utilize the resources made available to assist her with reunification. Further, that Mother demonstrated a lack of commitment by failing to regularly support, visit, and communicate with L.M. Wanosik testified L.M. needs a legally secure placement and Mother cannot give that to that to even to L.M., the child who she is closest with. Accordingly, Wanosik testified it is in the best interest of L.M. to grant permanent custody to FCCPS.

{¶16} On cross-examination, Wanosik testified that once Mother re-established services, she had a prescription for oxycodone. However, when Mother originally tested positive for opiates, Mother told Wanosik she did not have a prescription for the oxycodone. Further, that Mother had previously reported past opiate abuse without a prescription, but did not tell the substance abuse evaluator about this history. Mother

went to one or two counseling sessions, but never went back. L.M. enjoys her time with Mother, but worries about Mother taking care of herself, making good decisions, not being sick, and not being mad at her or her foster parents.

{¶17} On re-direct examination, Wanosik confirmed that the foster parents of L.M. are also foster parents of her brother M.M. and take them to see S.M., their sister, and will continue to do so to continue the sibling bond. Wanosik stated that since Mother's involvement with the agency, she has only lived in the same place for at longest six to eight months. Mother's last drug screen was on May 1, 2013, and the last call was on June 18, 2013. Wanosik testified that even if a parent has a prescription for narcotics, it is still concerning if they take a substantial amount of them as it can impair their parental decision-making. Accordingly, Wanosik believes that despite the fact that Mother has a prescription for oxycodone, it still is not in the best interest of L.M. to return to her. Further, that Mother is unable to get services (i.e. counseling) for herself and thus there are concerns about her ability to get L.M. these services. Wanosik confirmed that when something concerns her as a caseworker, she gives the parent an opportunity to demonstrate that it should not be a concern. However, Wanosik testified that Mother has not shown that Wanosik's concerns are unfounded. Wanosik stated that in the three years she has been involved in the case, Mother has never demonstrated that she could adequately care for L.M. despite the fact she has been given the opportunity to do so. Further, that even with Mother's bond with L.M., it is still in the best interest of L.M. to grant permanent custody to the agency because Mother is unstable in maintaining this bond and that instability has caused emotional and health concerns for L.M. and there would be adverse consequences to return L.M. to Mother.

{¶18} Mother testified on direct and cross examination at the continued trial date of September 25, 2013. She testified that, since the previous hearing, she had not found a doctor to prescribe her seizure medications, but found an old bottle of pills she is taking. Mother stated her friends and family can help her take her kids to the doctor and counseling. Mother is still not sure where her disability claim stands. Mother testified that if she does not have a ride to the random drug screens, there is no point in calling in, so she does not do so and has "pretty much given up." Mother testified she could get people to take L.M.'s sibling, S.M., to school every day thirty minutes away, but could not get a ride to her drug screens because the drug screens are in the afternoon. Mother never asked her caseworker if she could change the time of the drug screens because she "talks to her as little as possible." Mother testified she would do anything for her children, but when asked about complying with her case plan, Mother said she has not been able to make it to the drug screens and "there's nothing I can do about that. And I'm not going to sit in front of a shrink that can't help me with my depression." Finally, Mother confirmed that T.K. is currently married to another woman.

{¶19} T.K. testified that he currently lives with Mother and, while they have lived there for seven months, they do not have a lease. T.K. stated he is still married and is going to get a divorce but it has not been filed yet. T.K. is looking for work and is getting unemployment. T.K. testified he tested positive for oxycodone because he gave Mother her medication, then put "chew" in his mouth without washing his hands. T.K. and Mother last had reliable transportation three months ago.

{¶20} Long issued a third Guardian Ad Litem's report on January 24, 2013. In the report, Long discusses her findings under each factor found in R.C. 2151.414(D).

Long stated L.M. is bonded both to M.M. and foster parents, but wants to maintain some contact with Mother. L.M. is torn because she does not want to hurt Mother, but wants to stay with the foster parents and is afraid to tell Mother and hurt her feelings. L.M. was placed with the foster family in April of 2012. Long stated that the foster home is appropriate. Long noted that L.M. has been in the temporary custody of the agency for more than twelve months out of the previous twenty-two month period. Long stated that L.M. needs a secure placement and that Mother is no further along than when Long was appointed in 2011 with her case plan. Long's concerns with Mother include: her refusal to get off narcotic medications, she stopped working on her case plan from March 2011 to January 2012, is unable or unwilling to make necessary changes to become a suitable parent, is chronically chemically dependent to the point that she is unable to provide an adequate permanent home for L.M., lack of consistent housing as Mother relies on other friends and family for shelter, her failure to complete the case plan, her lack of consistent contact with L.M. for last two years, and her inability to care for herself. Long concluded that it is in the best interest of L.M. to grant permanent custody to FCCPS based on the factors in R.C. 2151.414(D).

{¶21} Pursuant to a judgment entry filed on November 20, 2013, the trial court terminated Mother's parental rights and granted permanent custody of L.M. to FCCPS. The trial court, by clear convincing evidence, found that R.C. 2151.414(E)(1), (4), (10) and/or (16) applies and that it would be in the best interest of L.M. to permanently terminate the parental rights of Mother.

{¶22} Appellant raises the following assignments of error:

{¶23} "I. THE DECISION OF THE TRIAL COURT GRANTING PERMANENT CUSTODY OF [MOTHER'S] CHILDREN TO FAIRFIELD COUNTY CHILD PROTECTIVE SERVICES WAS NOT SUPPORTED BY COMPETENT, CREDIBLE EVIDENCE AS THE RECORD DOES NOT CONTAIN CLEAR AND CONVINCING EVIDENCE THAT PERMANENT CUSTODY WAS IN THE CHILDREN'S BEST INTEREST.

{¶24} "II. [MOTHER] WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL."

I.

{¶25} "[T]he right to raise a child is an 'essential' and 'basic' civil right." *In re Murray*, 52 Ohio St.3d 155, 157, 556 N.E.2d 1169 (1990), quoting *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). An award of permanent custody must be based on clear and convincing evidence. R.C. 2151.414(B)(1).

{¶26} Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954). "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Id.* at 477. If some competent, credible evidence going to all the essential elements of the case supports the trial court's judgment, an appellate court must affirm the judgment and not substitute its judgment for that of the trial court. *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978).

{¶27} Issues relating to the credibility of witnesses and the weight to be given to the evidence are primarily for the trier of fact. *Seasons Coal v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). Deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evidence in the parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger,* 77 Ohio St.3d 415, 419, 674 N.E.2d 1159 (1997).

{¶28} R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon the filing of a motion for permanent custody of a child by a public children services agency.

{¶29} Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.

{¶30} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, a trial

court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

*R.C. 2151.414(B)(1)(a) through (d)*

**{¶31}** In this case, the trial court found by clear and convincing evidence that L.M. was abandoned by Mother, cannot be placed with Mother within a reasonable time, and has been in the temporary custody of a public children services agency for twelve or more months of a consecutive twenty-two month period pursuant to R.C. 2151.414(B)(1)(d). Appellant does not challenge the trial court's finding as to the first prong of the permanent custody analysis. These findings, in conjunction with a best-interest finding, are sufficient to support the grant of permanent custody. *In re Calhoun,* 5th Dist. No. 2008CA00118, 2008-Ohio-5458, ¶ 45.

*Best Interest*

**{¶32}** Mother argues the trial court erred in finding permanent custody was in L.M.'s best interest and that there is not competent and credible evidence to support L.M.'s permanent removal from Mother. Further, that Mother visits L.M. weekly and is bonded with her.

**{¶33}** We have frequently noted, "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." *In re Mauzy Children,* 5th Dist. No. 2000CA00244, 2000 WL 1700073 (Nov. 13, 2000), citing *In re Awkal,* 85 Ohio App.3d 309, 316, 642 N.E.2d 424 (8th Dist. 1994).

{¶**34**} In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child and (4) the child's need for a legally secure placement and whether that type of placement can be achieved without a grant of permanent custody; and (5) whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child. No one element is given greater weight or heightened significance. *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816.

{¶**35**} The focus of the "best interest" determination is upon the child, not the parent, as R.C. 2151.414(C) specifically prohibits the court from considering the effect a grant of permanent custody would have upon the parents. *In re: Awkal*, 95 Ohio App.3d 309, 315, 642 N.E.2d 424 (8th Dist. 1994).

{¶**36**} Mother specifically contends that the trial court erred in failing to address the maturity of L.M. and whether she could express her own wishes. We disagree. The statute "unambiguously gives the trial court the choice of considering the child's wishes directly from the child or through the guardian ad litem." *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816. Thus, the "trial court has discretion to accept the testimony of the guardian ad litem on the child's wishes rather than hearing a direct expression of those wishes made by the child." *Id.* A trial court errs if it completely fails

to address a child's wishes. *In re Swisher*, 10th Dist. Franklin Nos. 02AP-1408 and 02AP-1409, 2003-Ohio-5446.

{¶37} The trial court considered L.M.'s wishes as expressed through the report issued by Long, the guardian ad litem. Long's report says when she asked L.M. what she wanted to tell the court, L.M. was torn. L.M. does not want to hurt Mother's feelings, but wants to stay with her foster parents. However, L.M. told Long she is afraid that if Mother knows L.M. wants to stay with her foster parents, Mother's feelings will be hurt. Long stated that L.M. is bonded to her foster parents and her brother M.M., but still wants some contact with Mother as long as she makes good decisions. This is consistent with the testimony provided by Preuss that when Mother is out of the room, L.M. indicates she wants to live with the foster parents, but, when Mother is in the room, L.M. says she would live with her if she made the right decisions. Thus, it appears that L.M. is conflicted about her own wishes and failed to consistently express a desire to remain with Mother. Accordingly, there is no conflict between L.M.'s wishes and Long's recommendation that permanent custody is in L.M.'s best interest. See *In re B.W.*, 9th Dist. No. 12CA0016-M, 2012-Ohio-3416.

{¶38} Long noted in her report that she interviewed L.M., met her in person, and observed a visitation between Mother and L.M. In addition, L.M. was appointed her own attorney in this case. The attorney for L.M. did not object to Long's reports, did not cross-examine Long, and did not indicate L.M.'s wishes were in conflict with Long's recommendation. In its entry, the trial court stated that while L.M. is bonded with Mother, it is in L.M.'s best interest for permanent custody to be granted to FCCPS. The trial court also noted the date of birth of L.M. at the beginning of its entry and thus knew

how old L.M. was at the time of trial. Accordingly, the record contains competent and credible evidence that the trial court did consider L.M.'s wishes in light of her maturity. Further, the evidence shows that L.M. is bonded with both the foster parents and Mother. However, Mother's past conduct shows that she did not fully commit to being reunited with L.M. by completing the case plan, thus demonstrating she failed to take full advantage of continuing to maintain the relationship with L.M. Wanosik testified that even though L.M. has a bond with Mother, it is still in the best interest of L.M. to grant permanent custody to the agency because Mother is unstable in maintaining this bond and that instability has caused emotional and health concerns for L.M. and there would be adverse consequences to return L.M. to Mother.

{¶39} Further, even if L.M. had directly expressed a wish to live with Mother, this one factor would not require the trial court to deny FCCPS permanent custody, as the child's wishes are but a factor for the trial court to weigh along with others outlined in R.C. 2151.414(D). *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816. Regarding L.M.'s interactions and relationships, Long stated that L.M. is bonded to both Mother and her foster parents, but is afraid to tell Mother she wants to live with her foster parents because she does not want to hurt Mother's feelings. With respect to L.M.'s custodial history, the evidence shows that L.M. has been in the temporary custody of FCCPS for over twelve months. With regards to the fourth factor, Preuss testified that L.M. longs for permanency and the most important thing in her life right now is permanency. Further, Wanosik testified L.M. needs a legally secure placement and Mother cannot give that to that to L.M. Long stated that L.M. needs a secure placement and that Mother is no further along than when Long was appointed in 2011

with her case plan.  The evidence thus supports the trial court's finding that L.M. could not achieve a legally secure placement without granting FCCPS permanent custody.

{¶40} Despite having the opportunity to do so, Mother failed to complete the case plan.  Mother also, after multiple opportunities, failed to substantially remedy the conditions that caused L.M.'s removal.  Mother failed to obtain stable housing as there is no lease for her current home and has a history of unstable housing arrangements.  Mother admits she failed to attend counseling as recommended after her mental health assessment and failed to complete a second substance abuse assessment as required by FCCPS.  Mother also failed to remedy the concerns of the caseworker as to the continued use of narcotic pain medication and lives with T.K., who tested positive for oxycodone without a prescription.  Despite Mother's testimony that she stopped calling for random drugs screens because she had no transportation to get to the drug screens, Mother failed to make any effort to determine whether she could screen when her family and friends would be available to drive her.  Mother does not have a stable income and is completely dependent on T.K., who is paying the bills from an unemployment check, is currently married to another woman, and claimed that his positive test results occurred when he gave Mother her medication and then placed "chew" in his mouth without washing his hands.  Mother has failed to follow the recommendations of her doctors as she has been off her seizure medication for several months because she does not have a family doctor.  When asked whether she contacted doctors on her insurance list to find a doctor to prescribe her medication, Mother testified that she called some, but not all, of them.  At the time of the September 25, 2013 hearing, Mother was taking old seizure medication and was taking it without the directive of a

doctor. Mother failed to contact L.M. or work on any of her case plan from March 2011 to January of 2012 and also failed to call in and/or appear at multiple random drug screens.

{¶41} In addition, several factors in R.C. 2151.414(E)(7)-(11) apply to this case. Mother was charged with an offense listed in R.C. 2151.414(E)(c) in 2007 and, as listed in R.C. 2151.414(E)(9) and discussed above, failed to complete her case plan. Mother also abandoned L.M. as listed in R.C. 2151.414(E)(10). The trial court thus had more than sufficient clear and convincing evidence that Mother could not provide L.M. with a legally secure permanent placement and that Mother failed to substantially remedy the conditions that caused the child's removal. Additionally, the trial court considered the guardian ad litem's recommendation and the caseworker's recommendation that the court grant FCCPS permanent custody.

{¶42} Mother also argues there is no support for the trial court's finding of substance abuse because she had a valid prescription for oxycodone when she tested positive for the substance. Mother contends she has no history of prescription drug abuse and thus the trial court cannot rely on this in its finding of the best interest of L.M. Further, Mother argues she has made progress on her case plan with visitation and is consuming prescription drugs only. We disagree.

{¶43} As noted in the trial court's judgment entry and confirmed by Wanosik, once Mother re-established services in 2012, she provided FCCPS with a prescription for oxycodone. However, simply providing this prescription does not invalidate the concerns about Mother's substance abuse. Wanosik testified that, despite Mother's prescription for the oxycodone, she was still concerned because the amount of narcotic

pain medication Mother was taking can impair her parental decision-making. Further, Mother had the opportunity to consistently prove that she was testing positive for only her prescribed medications, but failed to do so as she missed sixty-four drug screens when she first started her case plan and ninety-five drug screens after she re-established services in 2012. While Mother testified her friends and family would provide transportation for S.M., L.M.'s sister, to and from school every day, Mother consistently testified that no family or friends would take her to her drug screenings so she just "stopped calling" because there was "no point." Mother failed to call Wanosik to request a different time for her drug screenings that would work with her family and friends' transportation availability. Mother also admits that she failed to complete the second substance abuse assessment as ordered by FCCPS. Accordingly, there is competent and credible evidence to support the trial court's determination that Mother has failed to complete the substance abuse portion of her case plan and remedy the concerns of FCCPS about substance abuse. The trial court properly utilized this factor in its determination of best interest.

{¶44} Further, even if the trial court incorrectly found there were still concerns about Mother's substance abuse with regards to the best interest of L.M., this one factor would not require the trial court to deny FCCPS permanent custody, as this is one factor for the trial court to weigh along with others outlined in R.C. 2151.414(D). *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816. As noted above, utilizing the factors contained in R.C. 2151.414(D), the trial court had more than sufficient clear and convincing evidence that Mother could not provide L.M. with a legally secure permanent placement.

**{¶45}** Based upon the foregoing evidence, we find that clear and convincing evidence supports the trial court's conclusion that it is in the best interest of L.M. to grant permanent custody to FCCPS.

II.

**{¶46}** Mother argues she was denied effective assistance of counsel because her trial counsel did not subpoena her doctors and failed to provide prescription drug records. Further, that trial counsel was ineffective because he failed to file a writ of procedendo because it had been more than two hundred days since the motion for permanent custody was filed without a decision rendered by the trial court.

**{¶47}** To demonstrate ineffective assistance of counsel, a defendant must satisfy both prongs of a two-prong test articulated in the case of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, the defendant must show trial counsel engaged in a substantial violation of an essential duty to his client, and secondly must show the trial counsel's ineffectiveness resulted in prejudice. *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). Prejudice is demonstrated when there is a reasonable probability that the result would have been different but for the alleged deficiencies of counsel. *Id.*

*Failure to Call Witnesses or Provide Prescription Drug Records*

**{¶48}** Appellant first argues her trial counsel was ineffective because he failed to subpoena Mother's neurologist and pain management doctor or provide the trial court with Mother's prescription drug records and Mother was thus prejudiced because trial counsel failed to address the concern about Mother's continued use of prescribed medications.

{¶49} We presume that a licensed attorney renders competent representation. *State v. Lott*, 51 Ohio St.3d 160, 555 N.E.2d 293 (1990). Because of this presumption, a party claiming the ineffective assistance of counsel due to counsel's failure to call witnesses bears the burden, under the first prong of the *Strickland* test, of identifying witnesses who should have been called at trial and describing for the court what their testimony would have entailed. See *State v. Stivender*, 2nd Dist. No. 19094, 2002-Ohio-6864. Absent some sense of who the witnesses would have been and what they would have testified to, a reviewing court will have no basis for overcoming the presumption that counsel acted competently. *In re C.C.*, 187 Ohio App.3d 365, 2010-Ohio-780, 932 N.E.2d 360 (8th Dist).

{¶50} With respect to Mother's claim that counsel was deficient in failing to present testimony from her doctors, Mother has failed to produce anything to demonstrate that such testimony would have been favorable. Mother is merely speculating that it would be positive testimony. Further, Mother provides no documentation to establish that such evidence, if it in fact exists and favors her, would have changed the outcome of the proceeding. Without any documentation as to the substance of such evidence, this Court is left only with speculation as to what such evidence would have revealed. Mother's assertions do not establish that a different outcome would have been reasonably probable. *In re J.T.*, 3rd Dist. Wyandot No. 16-10-12, 2011-Ohio-3435; *In re N.H.*, 9th Dist. No. 24355, 2008-Ohio-6617. Further, "decisions regarding the calling of witnesses are within the purview of defense counsel's trial tactics." *Id.*

{¶51} With regards to prescription drug records, Wanosik confirmed that Mother had a prescription for oxycodone when she re-established services. The trial court does not base its finding about substance abuse on the lack of prescription, but on the continued concerns of abuse of prescription medication, lack of compliance with drug screens, and lack of compliance with a second substance abuse assessment. Mother's assertions do not establish that a different outcome would have been reasonably probable with the introduction of prescription medication records.

{¶52} In addition, Mother's substance abuse issue was only one factor considered by the trial court in considering L.M.'s best interest and there is no indication by the trial court that this single issue is dispositive. As detailed above, utilizing the factors contained in R.C. 2151.414(D), the trial court had more than sufficient clear and convincing evidence that it was in the best interest of L.M. to grant permanent custody to FCCPS.

{¶53} Based on the foregoing, appellant has failed to demonstrate that her counsel was deficient and that she was prejudiced by such deficiency.

*Failure to File Writ of Procedendo*

{¶54} Mother further argues her trial counsel was ineffective for failing to file a writ of procedendo due to the trial court's delay in issuing a decision in this case.

{¶55} R.C. 2151.414 provides a permanent custody proceeding should occur within certain time frames. For instance, a hearing on the motion should be scheduled "not later than one hundred twenty days after the agency files the motion for permanent custody," and the motion should be disposed of "not later than two hundred days after the agency files the motion." R.C. 2151.414(A)(2). However, these time limits "do not

provide any basis for attacking the jurisdiction of the court or the validity of any order of the court." *Id.*

**{¶56}** The Ohio Supreme Court has stated similar time limits are directory, not mandatory, and such do not provide a basis for attacking the validity of the trial court's judgment. See *In re Davis,* 84 Ohio St.3d 520, 1999-Ohio-0419, 705 N.E.2d 1219. A litigant must seek a writ of procedendo against the juvenile court if it does not comply with the statutory time limits. *Id.*

**{¶57}** It is well-established that a reviewing court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the appellant as a result of the alleged deficiencies. *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). Furthermore, a "defendant must demonstrate actual prejudice and speculation regarding the prejudicial effects of counsel's performance will not establish ineffective assistance of counsel." *State v. Halsell,* 9th Dist. Summit No. 24464, 2009-Ohio-4166.

**{¶58}** Even assuming trial counsel's performance fell below an objective standard of reasonable representation, we find Mother cannot satisfy the second prong of the *Strickland* test or establish how her due process rights were violated. Mother argues the delay was prejudicial because the trial court focused on the length of time L.M. spent in the temporary custody of FCCPS. However, there is no evidence that the time lapse affected Mother, as by the time the motion for permanent custody was filed, L.M. had already been in the temporary custody of the agency for more than twelve months out of twenty-two consecutive months and the ninety-day requirement for abandonment had already been fulfilled.

{¶59} Further, there is no evidence the best interest analysis would have been different without the delay. In this case, the record shows that Mother missed multiple drug screens, failed to attend mental health counseling, failed to complete a second substance abuse assessment, lacks stable housing, is completely financially dependent upon T.K. as she does not have a stable income or employment, failed to visit L.M. or complete any of her case plan from March 2011 to May of 2012, and is not managing her medical concerns as provided by her doctors, leading the guardian ad litem's statement to the trial court that appellant is no further along with providing a secure placement for L.M. than when Long was appointed in 2011 and the statement by the caseworker that in the three years she has been involved in the case, Mother has never demonstrated that she could adequately care for L.M., despite the fact she has been given the opportunity to do so. The record contains abundant evidence to support the trial court's decision that permanent custody to the agency was in L.M.'s best interest. Under such circumstances, appellant fails to persuade us that the outcome of granting permanent custody to FCCPS would have been altered had her trial counsel, via a writ of procedendo, compelled the issuance of the final decision any sooner.

{¶60} Further, "It is well accepted law that a party is not permitted to complain of an error which said party invited or induced the trial court to make." *Hastings Mut. Ins. Co. v. McCoy*, 5th Dist. Knox No. 06 CA 33, 2007-Ohio-2447. In this case, a portion of the delays in the trial were at least somewhat precipitated by Mother. After the first part of the trial was held on January 31, 2013, the trial was continued to April 9, 2013. However, the trial could not go forward on that date because Mother was allegedly experiencing symptoms of a seizure and was taken to the hospital via ambulance. The

trial was then continued to June 18, 2013.  On that date, Mother was present at the hearing, but only receives six days written notice of the hearing.  However, Mother would not waive the seven-day notice requirement despite the fact that she appeared at the hearing and thus the trial again had to be re-scheduled.

{¶61}  Accordingly, Mother's second assignment of error is overruled.

{¶62}  Based on the foregoing, we find the trial court did not abuse its discretion in granting permanent custody of L.M. to FCCPS.  Mother's assignments of error are overruled and the November 20, 2013 judgment entry of the Fairfield County Common Pleas Court, Juvenile Division, is affirmed.

By Gwin, J.,

Hoffman, P.J., and

Wise, J., concur